HOBSON, Justice.
Appellants, Pearl Louise McKinnon, Daniel Angus McKinnon, Jr., and Louise McKinnon Granger, as plaintiffs below, brought an action in ejectment against John Commerford, appellee, seeking to oust him from possession of 80 acres of land. Appellants claim under the following chain of title: A warranty deed to S. E. Booher, dated June 1, 1922, conveying one tract of 40 acres; a warranty deed to S. E. Booher, dated November 18, 1922, conveying the other 40 acres; death of S. E. Booher intestate in California in 1924, leaving his wife, Louise C. Booher, his only heir at law; and will of Louise C. Booher, who died in 1926, leaving the subject property to the appellants.
Appellee’s claim is described in the following statement from the answer:
“This defendant further states that in January 1923 one S. E. Booher, who had recently purchased said lands gave said lands to this defendant and placed him in possession thereof; that immediately thereafter this defendant constructed a home upon said lands and began to clear the same for cultivation; that he cleared approximately 60 acres of said lands and thereafter from year to year for more than seven continuous successive years before 1935 the said defendant planted, cultivated and harvested crops of farm produce from said lands; that prior to 1930 this defendant completely enclosed said lands by a substantial fence and that said lands remained completely enclosed by a substantial fence through the year 1938 and for more than seven continuous successive years. This defendant further states that he did not at any time attorn to any person as his landlord; that he went into possession of said premises as his own by virtue of the gift as aforesaid and that since that time and for approximately 32 years 'no person made, offered to make or assert any claim or right to the title or possession of said lands and during said period of 32 years, from 1923 until 1955, this defendant remained in the open, adverse and notorious possession of said lands holding the same openly, adversely and notoriously against the claims of all persons whomsoever.”
In our subsequent discussion of the case we will refer to the parties, for conven-nce, as they were styled below.
*755 The case was tried before a jury and at the close of all the evidence plaintiffs moved for a directed verdict. This motion was denied and the jury returned its verdict for the defendant. A motion for judgment notwithstanding the verdict was also denied, and final judgment was entered for defendant. . .
The principal point raised on this appeal is whether of not the evidence was sufficient to sustain the result reached by the jury.
Since the defendant claims under' no written instrument, it is evident that his claim must be classified as “without color of title” under F.S. §§ 95.18 and 95.19, F.S.A. It is undisputed that the defendant has never returned the land for taxes, has never paid taxes thereon, and has never applied for homestead tax exemption. Taxes have been paid by or in behalf of the plaintiffs or their predecessors in title from the year 1922 to date. This is a circumstance to be considered in determining the character of defendant’s possession of the land, but it is not necessarily fatal to his position because the requirement of F.S. § 95.19, F.S.A., that the adverse occupant must have returned and paid the taxes within one year after entry and at all times subsequent thereto is inapplicable if the occupant’s adverse possession had ripened into title before 1939, at which date this requirement was inserted in F.S. § 95.-19, F.S.A. Stewart, Adverse Possession, 1 Florida Law and Practice, Sec. 19, and cases cited.
We must scrutinize carefully the circumstances surrounding the initial entry upon the land by the defendant and his status subsequent thereto as an alleged adverse occupant of the land. It appears from the testimony that in the early twenties- defendant met Mr. Booher and frequently hunted with him. They were often accompanied by one Dr. McKinnon, who was the. husband of the plaintiff Pearl Louise Mc-Kinnon (S. E. Booher was this plaintiff’s' step-father). The possibility of purchasing the land in suit was discussed one day and Mr. Booher, according to- defendant’s testimony, said “John, get an abstract deed to that place and the money is ready to pay for it. You will have a home, you won’t have to be moving from pillow to post.” One Plogg, a witness for the defendant, testified that he was present on this occasion and that Mr. Booher tol.d the defendant “to have an abstract made on that place and the money would be there to pay for it, and he wouldn’t have to move from pillow to post any more.” Thereafter, Mr. Booher purchased the land. In January, 1923, the defendant moved into'an old house on the land which he repaired to some extent. -Several years later he tore the house down- and rebuilt it, and has.lived in the rebuilt house since; He maintained a friendly relationship with Mr. Booher and Dr. McKinnon throughout their lifetimes, and took care of their hunting dogs for them.
The defendant further testified: “Aft.er the old gentleman [Mr. Booher] died I went in Dr. McKinnon’s office and I says ‘Well, Doc, Mr. Booher is dead, what about the place’, he says, ‘John, he bought that place for you, you go ahead and live on it just as you have been doing’.”
When the defendant moved on the land in 1923 there was an old rail fence on the east side, on the south there was a piece of old fence, and on the west it was fenced with “a little better than a quarter of wire”. In 1923, the defendant put up some wire. He did this again in 1925. He testified that it was all under fence from 1923 to 1939, and at the time of the trial it was “practically” all fenced. Part of the land was placed under cultivation.
On cross-examination of the defendant the following took place:
“Q. When did you first have a conversation with Mrs. McKinnon with reference to this land, when did she first, tell you they wanted possession of the land? A. Well, T can’t tell you 'the date, but I went to her house to see. her and talk to her.
*756 “Q. Did you state to her, in effect, about the first part of this year ‘I thought Mr. Booher expected me to live on the place as long as I lived, I have lived there so long’. Did you make any statement like that to her? ■A. I expect I did.
“Q. Had you ever, at any time prior to that, made any claim to Mrs. McKinnon, Dr. McKinnon, Angus Mc-Kinnon, Jr., or Mrs. Louise Granger that you claimed title to that land? A. Nothing only I told them I felt like it was my home.
“Q. I mean did you claim to have title to it? A. I told them I thought I was entitled to it; and I do.
“Q. Have you ever made any claim to either one of those parties I have just named that you claimed to have the title to that land, or that you owned the land? A. No.”
From this record it appears that the defendant’s possession of the land admittedly originated with the consent of the owner and was permissive during the entire period for which he claims, and thereafter. The first evidence of any conceivably hostile claim by the defendant was brought to the notice of the record owners after the only period for which defendant could assert a claim had run. Obviously, he cannot claim adverse possession for any period after 1939, because it is undisputed that he has never paid taxes on the property.
It is plain that the contention of defendant that he received a parol gift of the land must fail. Proof of such parol gift must be clear and convincing, Purvis v. Malloy, 129 Fla. 191, 176 So. 71; Todd v. Hyzer, 154 Fla. 702, 18 So.2d 888, and there must have been an intention to transfer title, Hodges v. Atlantic National Bank of Jacksonville, 134 Fla. 702, 184 So. 875. By defendant’s own testimony the most that Mr. Booher ever intended was that defendant should live on the land, and this intention was expressed before Mr. Booher ever acquired title to the land. The record is absolutely barren of any intention on the part of Mr. Booher or any other record owner to transfer title to the defendant. In summary, the entire record shows nothing but circumstances consistent with permissive possession, and the adverse and hostile element which must be present to sustain a claim of adverse possession in a case of this character is wholly lacking. It follows that the judgment appealed from must be, and it is hereby, reversed and the cause remanded with directions to enter judgment for the plaintiffs.
It is so ordered.
TERRELL, Acting C. J., and ROBERTS and THORNAL, JJ., concur.